HORNSBY'S
HEIRS
vs.
M'DERMOTT.

---

## HORNSBY'S HEIRS vs. M·DERMOTT.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, FOR THE PARISH OF
LAFAYETTE, THE JUDGE OF THE SEVENTH PRESIDING.

Admitting the plaintiffs are owners of the upper end of a larger tract of land,
yet if they show no location by an authorized survey, embracing the *locus in
quo*, they cannot maintain an action, even of trespass, against a possessor, so
as to oust or disturb him.

This is a suit in the nature of an action of trespass, in which
the plaintiffs claim damages against the defendant for entering
upon their land of which they claim to be in possession. They
pray that he be condemned to remove his fences and improve-
ments of every kind from their land and pay for the damage he
has already caused them.

The defendant pleaded the general issue. It appears from
the pleadings and evidence that the plaintiffs claim to be the
owners of the upper part or one undivided half of a larger

tract, confirmed to one Fletcher, and to be located in a particu-
lar manner.

Western Dis.
September,1841.

HORNSBY'S
HEIRS
vs.
M'DERMOTT.

The plaintiffs' portion calls to bound on the upper side by
lands owned by Josine Le Blanc and below by those of White.
No location was ever made of the plaintiffs' part by any autho-
rized surveyor; and nothing shows that the defendant's im-
provements are embraced by or included in the plaintiffs' claim.
They had judgment however quieting them in their possession
and title to the land in dispute, and for five dollars in damages.
The defendant appealed.

*Voorhies*, for the plaintiffs.

*Crow & Wm. B. Lewis*, for the defendants.

*Martin, J.* delivered the opinion of the court.

The plaintiffs state that the defendant has entered on their
premises and committed waste, and erected buildings and fen-
ces on a tract of land of which they are in possession as own-
ers; having inherited the same from Thomas Hornsby, de-
ceased. They pray that the defendant be decreed to remove
his buildings and fences from their land, and to pay them one
thousand dollars in damages; and for general relief.

The general issue is pleaded. The plaintiffs had judgment
for the land, and five dollars in damages; and the defendant
appealed.

The plaintiffs claim through several mesne conveyances
from Thomas Fletcher, the original grantee, who obtained
from the land commissioners of the United States; a certificate
of confirmation of an inchoate right acquired under the Spa-
nish government in consequence of a settlement and cultiva-
tion, to a tract of land containing 640 acres, situated in the
county of Attakapas on the left or east side of the bayou Ver-
million, fronting on said bayou, and to be laid out 40 arpents
in depth, giving so much front on the right line as will give
the quantity above expressed. The right of Fletcher to this

WESTERN DIS.
September,1841.

HORNSBY'S
HEIRS
*vs.*
M'DERMOTT.

land was acquired by Peyton Bland from the administrator of the former, sold by order of the Court of Probates. Bland's title passed to Alexander Porter under a sheriff's sale, in which the land sold is thus described: "a certain parcel of land situated on the east side of the river Vermillion, bounded above by lands of Josine Le Blanc and below by lands of Wm. White, consisting of 640 superficial arpents." Porter sold to Theall and described the land as "one undivided half of a certain tract or parcel of land, situated in the parish of Lafayette and lying on the east side of the river Vermillion, consisting of 640 superficial arpents." John B. Theall sold to Thomas Hornsby, the ancestor of the plaintiffs, on the 18th of February, 1832, one undivided half of this land, describing it in his deed of sale, to be "the undivided upper half of 640 acres of land, lying and being, in the parish of Lafayette, on the east bank of the river Vermillion, and part of the same tract originally confirmed to Thomas Fletcher by the commissioner's certificate, &c., in conformity with a re-survey made by Wm. Jackson, deputy surveyor, the 6th February, 1832, &c.; said land bounded above by Veuve Josine Le Blanc and below by the lower half of said section, belonging to Lloyd Wilcoxon." The survey of Jackson is expressly made a part of Theall's deed, to which it is annexed, but is not to be found in the records of the present suit. There is no evidence of any location ever being made of the original tract. It was to contain 640 acres, equal to 756 27-100 arpents and the depth is expressly stated in the certificate to be 40 arpents; consequently the front line on the Vermillion river should be nearly 19 arpents. The location of this tract was to be made so as to include the improvements of Fletcher, the original grantee. All the mesne conveyances state that the location was to be made on a larger tract fronting on the river, but bounded above by the lands of Josine Le Blanc and below by those of Wm. White.

Admitting the plaintiffs are owners of the have shown themselves to be the owners of the upper half of

the tract, yet they have shown no location under the authority of the United States, which would embrace the *locus in quo*. If the tract confirmed to Fletcher be located according to its description, with such a part as multiplied by forty would give the superficies of 640 acres and embracing the improvements made by Fletcher, it is clear it would not extend so high up as to cover the place occupied by the defendant. It is true the mesne conveyances speak of Josine Le Blanc's line as the upper boundary, and that may be conclusive between the vendor and vendee, but so far as a stranger is concerned, the premature title or a public survey, duly approved, must be looked into in order to ascertain the true location of the land. Nor do the plaintiffs show possession under his deed, so as to authorize them to maintain this action, which appears to us to be strictly neither petitory nor possessory, but in the nature of an action of trespass *quare clausum fregit*.

The judgment of the District Court is therefore annulled and reversed, and judgment of non-suit entered against the plaintiffs with costs in both courts.

WESTERN DIS.
*September,* 1841.

upper end of a larger tract of land, yet if they show no location by an authorized survey, embracing the *locus in quo*, they cannot maintain an action, even of trespass, against a possessor, so as to oust or disturb him.